02-11-163-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00163-CR

 

 


 
 
 John Paul Ross
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 396th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I. 
Introduction

In
three issues, Appellant John Paul Ross appeals his robbery conviction. We affirm.

II. 
Factual and Procedural Background

Ross
entered a CVS pharmacy wearing a hat and sunglasses, approached photo manager
Maria Hernandez at the cash register, told her that he wanted to exchange an
item, and handed her the item in a sack.[2]  Ross then told Hernandez
that he had forgotten his wallet and that he would be right back.  When Ross
returned, Hernandez told him that she could not do anything without a receipt.  At
that point, Ross told her to come closer to the counter and then whispered for
her to “nice and quietly” put all of the money in the cash drawer into the sack
that he had given her.[3]  Hernandez told Ross that
she did not have a key to the register and that he had to buy something for her
to open it.  Ross said to her, “[Y]ou think I’m playing?”  Hernandez replied
that she was “not playing either.”

Hernandez
said that she moved away from the cash register and unsuccessfully tried to get
the attention of her manager, Haley Phillips.  When Ross approached Phillips, Hernandez
asked a customer to call 9-1-1, but the customer was unable to do so because she
did not have a cell phone.  Once Hernandez got Phillips’s attention, she told
Phillips that they were being robbed and that Phillips needed to call 9-1-1.  Phillips,
who knew Hernandez not only as a coworker but also as a long time family
friend, said that she could tell from the look in Hernandez’s eyes that she was
scared.  Phillips said that after she called 9-1-1, when Ross asked Phillips
what she was doing in a stern voice, she “freak[ed] out” and became hysterical
before she heard the approaching police sirens.

Hernandez
testified that Ross approached her again and whispered to her to finish ringing
up her customer, to leave the register open, and to hand him the money.  But Hernandez
rang up three or four customers and then closed the register each time.  After
one of those occasions, Ross asked Hernandez why she had closed the register,
and Hernandez told him that she was not going to give him anything.  Ross left
the store when police vehicle sirens became audible, but police apprehended him
before he drove out of the parking lot.  The State indicted Ross for robbery.

Hernandez
stated that she had been angry about having been robbed at gunpoint the
previous week but she was also afraid during the encounter with Ross and that
she felt threatened by both Ross’s words and his actions.  Ross wore his
sunglasses and hat the entire time and kept his hands in his pockets, but
Hernandez said that she never saw a weapon and that she could tell that Ross did
not have a weapon in his pockets.  However, Hernandez also said that she was
afraid that Ross might grab her, pull her over the counter, or otherwise injure
her somehow.  Hernandez testified that she thought that Ross was trying to
commit theft and that she felt threatened and scared; she agreed that she was
afraid of imminent injury.[4]  Phillips and Fort Worth
Police Officer Stephanie Tabor, who responded to the 9-1-1 call, both described
Hernandez’s post incident demeanor as shaking and crying.[5]

A
jury found Ross guilty of robbery, and the trial court sentenced him to thirty
years’ confinement.  This appeal followed.

III. 
Fear of Imminent Bodily Injury

In
his first issue, Ross claims that there was insufficient evidence to prove that
he either intentionally or knowingly threatened or placed Hernandez in fear of
imminent bodily injury or death.

A.  Standard
of Review

In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Isassi v. State, 330
S.W.3d 633, 638 (Tex. Crim. App. 2010).

This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Isassi, 330 S.W.3d at 638.  The trier of
fact is the sole judge of the weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075
(2009).  Thus, when performing an evidentiary sufficiency review, we may not
re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the factfinder.  Williams v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214 S.W.3d 9,
16–17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved any
conflicting inferences in favor of the verdict and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Isassi, 330 S.W.3d at 638.

In
determining the sufficiency of the evidence to show an appellant=s
intent, and faced with a record that supports conflicting inferences, we Amust
presume—even if it does not affirmatively appear in the record—that the trier
of fact resolved any such conflict in favor of the prosecution, and must defer
to that resolution.@  Matson v. State,
819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

B.  Robbery

The
State had to prove beyond a reasonable doubt that Ross, while in the course of
committing theft of property and with intent to obtain or maintain control
of the property, intentionally or knowingly threatened or placed Maria
Hernandez in fear of imminent bodily injury or death.  See Tex. Penal Code
Ann. § 29.02 (West 2011).  This statute, written in the disjunctive, covers
both a situation in which the defendant actually threatens the victim and a
situation in which the defendant implicitly threatens the victim and places the
victim in fear.  See Howard v. State, 333 S.W.3d 137, 138–39 (Tex. Crim.
App. 2011); see also Olivas v. State, 203 S.W.3d 341, 346 (Tex. Crim.
App. 2006) (recognizing that “to threaten” and “to place someone in fear” have two
distinct meanings).  The court of criminal appeals has further explained that

[t]he plain language of the statute encompasses not just
explicit threats, but whatever implicit threats may lead to the victim being
placed in fear.  So long as the defendant’s actions are “of such nature as in
reason and common experience is likely to induce a person to part with his
property against his will,” any actual or perceived threat of imminent bodily
injury will satisfy this element of [robbery].

Howard,
333 S.W.3d at 138 (internal citations omitted).

As
for the culpable mental state, “[a] person acts knowingly, or with knowledge,
with respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.”  Tex. Penal Code Ann. § 6.03(b)
(West 2011); Howard, 333 S.W.3d at 139 (recognizing that when the jury
could have found the appellant guilty for either culpable mental state, “we
need only address the less-culpable mental state of knowingly”).  Therefore, robbery-by-placing-in-fear
requires “that the defendant is aware that his conduct is reasonably certain to
place someone in fear, and that someone actually is placed in fear.”  Howard,
333 S.W.3d at 140.  That is, any actual or perceived threat of imminent bodily
injury will satisfy this element “[s]o long as the defendant’s actions are ‘of
such nature as in reason and common experience is likely to induce a person to
part with his property against his will.’”  Id. at 138 (quoting Cranford
v. State, 377 S.W.2d 957, 958 (Tex. Crim. App. 1964)).

C.  Analysis

Ross
argues that the evidence “[a]t most” shows an attempted theft but is
insufficient to show that he intentionally or knowingly threatened Hernandez
with imminent bodily injury or death or that he intentionally or knowingly did
an act that placed Hernandez in fear of bodily injury or death.  He complains
that the focus here is not on the victim’s subjective fear but on whether he
committed an act that he intended or knew would cause Phillips or Hernandez to
believe that he was going to hurt or kill them.

The record,
as set out above, reflects that Hernandez repeatedly refused to give Ross the
money, that Hernandez said that during the encounter she was afraid of imminent
injury and felt threatened, and that Hernandez repeatedly tried to have someone
call 9-1-1.  The trier of fact had the responsibility to weigh this evidence in
light of Hernandez’s other testimony that Ross never produced a weapon and that
she was angry because she had been robbed at gunpoint the week before.  See
Tex. Code Crim. Proc. Ann. art. 38.04; Brown, 270 S.W.3d at 568.  Furthermore,
Phillips and Officer Tabor described Hernandez’s shaken and tearful demeanor
immediately after the robbery, and Detective Sullivan stated that around an
hour later, Hernandez was still visibly distraught.  Based on the record before
us, we conclude that the jury’s inference that Hernandez was placed in fear was
reasonable based on the cumulative force of all the evidence.  See Hooper,
214 S.W.3d at 16–17; see also Burton v. State, 230 S.W.3d 846, 853 (Tex.
App.—Houston [14th Dist.] 2007, no pet.) (concluding that appellant’s informing
teller that this is a “holdup” and demanding money reasonably placed the teller
in fear of bodily injury).

Further,
with regard to whether there was sufficient evidence that Ross was aware that
his conduct was reasonably certain to place Hernandez in fear, the record
reflects that when Ross interacted with Hernandez, he whispered, was wearing
sunglasses and a hat, and kept his hands in his pockets.  While Hernandez said
that she could tell that Ross did not have a weapon in his pockets, this does
not negate that Ross had concealed his face behind sunglasses inside the store and
concealed his hands in his pockets, actions that the jury could have concluded indicated
Ross’s awareness that his actions were reasonably certain to put Hernandez in
fear that he was trying to hide his identity or a weapon.  See Howard,
333 S.W.3d at 138 (recognizing that inquiry’s focus is on the defendant’s conduct). 
The jury could have chosen to believe Hernandez that Ross told her to give him
the money and that he was “not playing” and could have concluded that, based on
Ross’s demand and his assurance that he was serious, Ross knew with reasonable
certainly that his actions would place Hernandez in fear of imminent bodily
injury or death.  See id.; Hooper, 214 S.W.3d at 16–17.  Therefore,
viewing all of the evidence in the light most favorable to the verdict, we
conclude that a rational trier of fact could have found beyond a reasonable
doubt that Ross was aware that his conduct was reasonably certain to place
Hernandez in fear and that Hernandez was actually placed in fear.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Howard, 333 S.W.3d at 137–38; Isassi,
330 S.W.3d at 638.  We overrule Ross’s first issue.

IV.  Closing
Argument

In his
second and third issues, Ross contends the trial court erred by allowing the prosecutor
to argue during the State’s closing argument that (1) the only issue was
whether Hernandez was “in fear,” arguing that this was a gross
oversimplification of the legal issue and in conflict with the jury charge, and
(2) Ross put Hernandez “in fear,” arguing that this presented an incorrect
statement of law because it failed to include a reference to imminent bodily
injury.

The prosecutor
began her closing argument by commenting that “[t]he only issue in this case is
whether or not Maria Hernandez was in fear.  It’s not about if he had a
weapon.  It’s not about if he told her he would kill her.”  After Ross objected
and the trial court overruled his objection, the prosecutor explained that
Hernandez “thought he could have grabbed her.  She thought he could have come
over the counter.  She was afraid he would perform bodily injury on her.”  And
during the State’s rebuttal argument, the prosecutor said, “His intentional acts,
his words, his body language, the way he said it, placed her in fear, and he
was trying to get the money.  That is a robbery.”  Ross objected and complained
that the full element is “placed her in fear of imminent bodily injury and
death, not merely in fear,” even though the prosecutor had already clarified
moments earlier that the “fear” must be “fear of bodily injury or death.”  The trial
court overruled Ross’s objection.

While
it is error for the State to present a statement of law that is contrary to
that presented in the jury charge, it is not error for the State to quote or
paraphrase the jury charge.  Whiting v. State, 797 S.W.2d 45, 48 (Tex.
Crim. App. 1990).  Because the prosecutor clarified both times that the fear to
which she referred was fear of imminent bodily injury, we cannot say that the
State presented a statement of the law that was contrary to the law presented
in the jury charge.  See id.  Accordingly, we overrule Ross’s second and
third issues.

V.  Conclusion

Having
overruled each of Ross’s issues, we affirm the trial court’s judgment.

 

 

BOB MCCOY

JUSTICE

 

PANEL: 
WALKER,
MCCOY, and GABRIEL, JJ.

 

GABRIEL,
J., filed a concurring opinion.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 23, 2012




 
 
 
 
 
 


 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00163-CR


 
 
 John Paul Ross
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
 
 
 
 
 The
 State of Texas
 
 
  
 
 
 STATE
 
 


----------

FROM THE 396th
District Court OF Tarrant COUNTY

----------

CONCURRING
MEMORANDUM OPINION[6]

----------

          A
robber can be ineffective at robbery and his victim can be uncooperative to the
point of foolish obstinacy but under the appropriate standard of review, a
robbery conviction will be, and properly should be, upheld.  In this case,
Appellant’s actions, placed in context with the surrounding circumstances, were
sufficient to place a reasonable person in Hernandez’s circumstances in fear of
imminent bodily injury.  A threat need not be explicitly voiced but can be
communicated by a person’s actions.  McGowan v. State, 664 S.W.2d 355,
357 (Tex. Crim. App. 1984); Donoho v. State, 39 S.W.3d 324, 329 (Tex.
App.––Fort Worth 2001, pet. ref’d) (op. on reh’g).  The critical inquiry is
whether the accused acted in such a manner as would, under the circumstances,
portend an immediate threat to a person of reasonable sensibility.  See
Olivas v. State, 203 S.W.3d 341, 346 (Tex. Crim. App. 2006).

          It
has long been held that the party being robbed need not be “scared” to the
extent that he is hysterical.  Horn v. State, 89 Tex. Crim. 220, 222,
230 S.W. 693, 694 (Tex. Crim. App. 1921).  If under the circumstances and
conditions surrounding the transaction he has a reasonable belief that he may
suffer injury unless he does comply with the robber’s request, the “fear”
required by the law is present.  Id.  “The fear must arise from the
conduct of the accused however, rather than the mere temperamental timidity of
the victim.”  Cranford v. State, 377 S.W.2d 957, 959 (Tex. Crim. App.
1964). A robber cannot escape conviction simply because his victim is
dangerously unyielding.

          Here,
Appellant was clearly focused on placing Hernandez in fear to obtain property
that did not belong to him and Hernandez testified that she was placed in
fear.  She may have not acted reasonably given the circumstances, but because
the test is whether the defendant’s actions are “of such nature as in reason
and common experience is likely to induce a person to part with his property
against his will,” because that was a question properly resolved by the jury,
and because evidence in the record support’s the jury’s resolution of that
issue, the conviction stands.  See Howard v. State, 333 S.W.3d 137, 138
(Tex. Crim. App. 2011); Wilmeth v. State, 808 S.W.2d 703, 706 (Tex.
App.––Tyler 1991, no pet.).

 

 

LEE GABRIEL
JUSTICE

 

DELIVERED:  August 23, 2012

 









[1]See Tex. R. App. P. 47.4.





[2]Hernandez said that the
item was some kind of oil but that it was not from CVS.





[3]Hernandez also initially
testified that Ross had told her to do so “or else” but then said that she did
not remember him saying that.  On cross-examination, she acknowledged that immediately
after the incident, she did not mention to detectives that Ross had said “or
else.”





[4]The trial court admitted
the CVS surveillance video during Hernandez’s testimony and allowed the State
to publish it to the jury.





[5]Fort Worth Police
Detective Kyle Sullivan testified that when he interviewed Hernandez around an
hour after the incident, she was still visibly distraught.





[6]See Tex. R. App. P. 47.4.